CRAWFORD, APPELLANT, *v.* PIERSE ET AL., RESPONDENTS.

(No. 4,040.)

(Submitted September 15, 1919.   Decided November 5, 1919.)

[185 Pac. 315.]

*Contracts—Real Property—Breach—Part Payments—Recovery Back—Fraud—Ratification—Estoppel—Debt — Presumptions —Complaint—Insufficiency—Default Judgments—Vacation—Courts—Jurisdiction.*

Judgments—Vacating Default—Showing Necessary.
1.  A default judgment should not be vacated on the ground of excusable neglect on the part of counsel for movant, however meritorious, unless the showing made, either in the form of an affidavit of merits or a copy of defendant's proposed answer, exhibits a *prima facie* good defense.

Same—Insufficiency of Showing—Conclusions.
2.  A statement in defendant's application to set aside a default judgment, to the effect that defendant had fully and fairly stated the facts to his counsel and was advised by him that he had a good and substantial defense on the merits was no more than a conclusion of counsel and insufficient to meet the requirement of the rule above (paragraph 1).

Pleading and Practice—Reinstatement of Demurrer—Proper and Improper Procedure.
3.  *Held,* that the proper mode for procuring the reinstatement of a demurrer after overruling of same was by motion after notice to adverse counsel, and not by oral request of the judge at chambers or upon the street.

Judgment—Invalidity—Force and Effect.
4.  A void judgment is no judgment; its validity is open to question at any time; it cannot be enforced; no right can be derived from it; all proceedings founded upon it are invalid and ineffective for any purpose; it is open to collateral attack, and the court which rendered it may set it aside at any time.

Void Judgment—Invalidity Incurable.
5.  An affirmance of a void judgment does not make it valid, and the legislature by curative statute cannot give it life or force.

Pleading—Complaint—Insufficiency—How Challenge Viewed on Appeal.
6.  When the sufficiency of a complaint is challenged for the first time on appeal, the objection that it does not state a cause of action is regarded with disfavor, and every reasonable inference will be drawn from the facts stated necessary to uphold the complaint.

Default Judgment—Insufficiency of Complaint—Presumptions.
7.  A default judgment will not be held void though the statement of the cause of action may be so defectively made that it would have been open to general demurrer, if its direct averments necessarily imply or reasonably require an inference of the facts necessary to supply the defect.

Courts—"Jurisdiction" Defined.

8.  Jurisdiction is the power to hear and determine the particular case presented for consideration, and to render such a judgment as the law authorizes in that case.

Same—Jurisdiction—Complaint—Sufficiency.

9.  The district court can acquire jurisdiction of any particular civil case only if the statement of the cause of action discloses a case, either by direct averment or by necessary implication from the facts stated, upon which the court may grant redress.

Default Judgment—Insufficiency of Complaint—Collateral Attack.

10.  A judgment based upon an insufficient complaint is invalid, and since in the case of a default judgment the record (Rev. Codes, sec. 6719) itself discloses its infirmity, it is subject to collateral attack at any time when it is sought to be made the basis of a right.

[As to judgments which are void and subject to collateral attack, see note in 23 Am. St. Rep. 104.]

[Irregularities of service of process as affecting court's jurisdiction or collateral attack, see note in 1 Ann. Cas. 923.]

Contracts—Breach—Recovery of Part Payments — Complaint — Immaterial Allegations.

11.  In determining the sufficiency of the complaint in an action in the nature of one for money had and received, based upon a contract of sale of farm lands, on the theory that the defendant violated the contract thus giving the plaintiff the right to abandon it and to recover what money had been paid on it, for the purpose of ascertaining whether the district court had acquired jurisdiction to enter a valid judgment (paragraph 9, *supra*), allegations contradictory of or inconsistent with the writing must be disregarded as immaterial.

Same—Fraud—Ratification—Estoppel.

12.  Where a party with full knowledge of the falsity of representations relative to boundaries of land, the number of acres sown in grain and grass, *etc.*, bought by him under a written contract, ratifies the transaction by agreeing to a settlement with the seller through the instrumentality of a new agreement, he may not thereafter assert its invalidity, nor rescind on the ground of fraud and recover payments already made.

Same—Indebtedness—Presumption Against.

13.  Where one borrows money from another upon a promise to repay him but makes no mention of a debt claimed to be due him from the latter, the presumption arises that the lender is not indebted to the borrower.

Same—Presumption That Writing Contains All Engagements.

14.  Where a contract supplemental to one made for the sale of lands recited that it was made for the purpose of granting the buyer additional time in which to make payment, it precluded the idea that it was made for any other purpose, and in the absence of allegation of mistake or other imperfection, the presumption is conclusive that the writing contained all the engagements then made by the parties.

Same—Breach—Recovery of Part Payments—Complaint—Immaterial Allegations.

15.  Allegations in an action to recover money paid on a contract of sale of lands on the theory that the vendor had breached, to the effect that defendant had excluded plaintiff from possession of the land, had threatened his life and that of his agent, and attempted by force to drive them from the premises, *etc.*, were immaterial, where by express

stipulation in the contract defendant was to remain in exclusive posses-
sion and control of the property until delivery of deed to plaintiff.

Same—Breach—Recovery of Part Payments—Nature of Action.

16. Upon a breach by the vendor of a contract to convey, the vendee
may abandon the engagement and sue for the amount paid thereon, as
for money held by the vendor for his use and benefit.

*Appeal from District Court, Fergus County; Roy E. Ayers,
Judge.*

ACTION by Sara A. Crawford against Allen Pierse and an-
other, copartners doing business under the name and style
of Pierse & Poetter. From an order setting aside a default,
plaintiff appeals. Affirmed.

*Mr. Oscar O. Mueller,* for Appellant, submitted a brief and
argued the cause orally.

*Messrs. Belden & De Kalb,* for Respondents, submitted a
brief; *Mr. O. W. Belden* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Appeal by the plaintiff from an order made upon application
of defendants, setting aside a judgment entered on their default.
The order was made on the ground that the default occurred
through the excusable neglect of defendants' counsel. Several
contentions are made in this court, but it will be necessary to
notice only two of them.

1. Plaintiff contends that the district court was guilty of an
[1] abuse of discretion because, though the application was
sufficient to make out a case of excusable neglect, it was wholly
insufficient to warrant the granting of the order, in that it was
not supported by a statement of the facts constituting a de-
fense to the action either in the form of an affidavit of merits
or a copy of defendants' proposed answer. The facts stated
in the affidavit were, we think, sufficient to excuse counsel's
delinquency. But however meritorious in this respect such an
application may be, it will not justify the court in setting aside

a default judgment and permitting the defendant to answer, unless he exhibits a *prima facie* good defense on the merits. The only showing made in this behalf was the following [2] statement by defendant Poetter in his affidavit tendered in support of the application: "That he had fully and fairly stated the facts in the case to Belden and De Kalb, counsel for defendants * * * and after such statement was advised by them that defendants had a good and substantial defense on the merits of the action." This amounts to nothing more than a statement of the conclusion of counsel upon facts not disclosed, that the defendants had a meritorious defense. That it does not meet the requirements of the rule often announced by this court is demonstrated by the following cases: *Bowen* v. *Webb,* 34 Mont. 61, 85 Pac. 739; *Schaeffer* v. *Gold Cord Min. Co.,* 36 Mont. 410, 93 Pac. 334; *Vadnais* v. *East Butte E. C. Min. Co.,* 42 Mont. 543, 113 Pac. 747.

It appears that the default and judgment were entered after the overruling of a general demurrer which counsel had [3] interposed to the complaint, but failed to appear and argue at the time fixed by the court for that purpose. After the demurrer had been overruled, and within the time allowed by the court for defendants to answer, Mr. De Kalb had requested the presiding judge to make an order reinstating the demurrer for argument. This request was made of the judge at his chambers. The judge promised to make the order. Later and before the time for answer had expired, Mr. Belden spoke to the judge on the street near the courthouse, who again promised to direct the clerk to enter the requested order. The order was never made; but after default had been entered by the clerk at the request of plaintiff's counsel, the judge in open court heard the evidence submitted by him and rendered judgment. Such practice as was pursued by counsel here cannot be commended. To have the order overruling the demurrer set aside, they should have applied to the court by motion, after notice to counsel for defendants. (Rev. Codes, sec. 6589.) Upon obtaining an order vacating the prior order, they should have

taken care to see that it was properly entered by the clerk.   We think, however, that they were put off their guard by the promises of the judge, and for this reason failed to save the default.   But, as pointed out in the cases cited above, a showing of excusable neglect was not enough to move the court to exercise the discretionary power vested in it by the statute.   It was indispensable that the facts constituting a substantial defense on the merits should have been exhibited to the court, either in an affidavit or in a copy of defendants' proposed answer.

Counsel cite and rely upon the case of *State ex rel. Stephens* v. *District Court,* 43 Mont. 571, Ann. Cas. 1912C, 343, 118 Pac. 268, to maintain their position that the affidavit of defendant Poetter is sufficient as one of merits.   That case has no application.   What was there said referred to the contents of the affidavit of merits required by section 6505 of the Revised Codes to support a motion for a change of the place of trial.

2. Counsel for defendants contend that, though the court abused its discretion in making the order, its action should be upheld, for the reason that it did not have jurisdiction to render the judgment, because the complaint does not state facts sufficient to constitute a cause of action.   Counsel for plaintiff insists that this contention was not made in the district court, and therefore cannot be made for the first time in this court.   The contention of counsel for defendants proceeds upon the assumption that the judgment was void; that the district court would properly have set it aside if its attention had been called to it, and hence that this court will not order it to be reinstated.

Of course, if the judgment was void, the contention must be sustained, for its validity was open to question at any time. (*State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 752.)   It is elementary that when the judgment-roll upon its face shows that the court was without jurisdiction to render the particular judgment, its pronouncement is in fact no judgment. It cannot be enforced.   No right can be derived from it.   All proceedings founded upon it are invalid and ineffective for any purpose.   It is open to collateral attack.   The court which

rendered it may set it aside at any time as an encumbrance upon its records. (*State ex rel. Mannix* v. *District Court, supra; In re Dolenty's Estate,* 53 Mont. 33, 161 Pac. 524; Van Fleet on Collateral Attack, sec. 16; 1 Freeman on Judgments, sec. [5] 117.) An affirmance of such a judgment on appeal cannot make it valid. (*Chambers* v. *Hodges,* 23 Tex. 104; *Wilson* v. *Montgomery,* 14 Smedes & M. (Miss.) 205.) Nor can the legislature by curative statute give it life or force. (*Davidson* v. *Wampler,* 29 Mont. 61, 74 Pac. 82.)

When the sufficiency of a complaint is challenged for the first [6] time on appeal, the objection that it does not state a cause of action is regarded with disfavor, and every reasonable inference will be drawn from the facts stated necessary to uphold it. (*Ellinghouse* v. *Ajax Live Stock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481.) Matters of form will be disregarded, as well as allegations that are irrelevant and redundant. If upon any view the plaintiff is entitled to relief the pleading will be held sufficient. (*Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648.) A corollary of this rule is [7] that a judgment rendered upon default will not be held void even though the statement of the cause of action may be so defectively made that it would have been open to general demurrer, provided its direct averments necessarily imply, or reasonably require, an inference of the facts necessary to supply the defect. (*County of Silver Bow* v. *Davies,* 40 Mont. 418, 107 Pac. 81; Phillips on Code Pleading, sec. 352.)

Jurisdiction is the power to hear and determine the particular [8] case presented for consideration, and to render such a judgment as the law authorizes in that case. In other words, it is the power to hear and determine the questions *coram judice* in that particular case. (*State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395. See, also, *State ex rel. King* v. *District Court,* 24 Mont. 494, 62 Pac. 820; 1 Black on Judgments, sec. 242; 1 Freeman on Judgments, 117.)

The district court is a court of general jurisdiction. It [9] therefore has power to hear and determine all classes of

cases, except petty cases, of which justices of the peace and police courts are by the Constitution (Art. VIII, sec. 11) given exclusive cognizance. Though within this limitation it has jurisdiction, in a general sense, over all classes of cases, it can acquire jurisdiction of a particular civil case only by the filing of a written complaint (Rev. Codes, sec. 6513), which, besides the formal parts, must contain a statement of the facts constituting the cause of action, in ordinary and concise language. (Sec. 6532.) However clear and concise the statement of facts may be, if it does not disclose a case upon which the court may grant redress, jurisdiction does not attach. Even though it appears that the pleader has attempted to state a case of which the court has cognizance, still jurisdiction does not attach unless the allegations bring the complaint within the rule announced in *County of Silver Bow* v. *Davies,* *supra.* The court cannot redress a particular wrong unless the facts constituting the wrong are made manifest to it in a written complaint, as provided by the statute. It is only by this means that its general power can be brought into activity in a given case. If the pleading is not [10] sufficient to put the defendant in the wrong, the court cannot grant redress. A judgment based upon such a pleading is invalid. The pleading is in effect no more than a piece of blank paper. And, since when a judgment has been rendered on default, the complaint, with the memorandum indorsed upon it that default has been entered, the summons with the proof of service, and a copy of the judgment constitute the record (Rev. Codes, sec. 6719), the record itself discloses the infirmity of the judgment. It is thus exposed to collateral attack at any time when it is sought to be made the basis of a right.

Counsel do not cite any cases in support of their contention, nor have we found any in point. We think, however, that there can be no doubt as to the soundness of the conclusions stated above. What we here say applies especially to cases of default judgments. In determining the validity of a judgment rendered in a case in which issue has been joined and a trial

had, considerations are often presented which must be taken into account and be given force. These do not require notice here.

The action grew out of a contract entered into on January 12, 1915, between plaintiff and defendants, under the terms of which the latter agreed to sell, and the former agreed to buy, certain ranch lands including water rights and other appurtenances, situated in Fergus county, and a large amount of personal property, consisting of stock and farming machinery used in connection therewith. The stipulated price was $30,000, of which $5,000 was to be paid in cash upon the execution of the contract. The balance was to be paid in installments as follows: $1,000 on May 1, 1915; $4,000 on October 1, 1915; and $5,000 on October 1 of each year thereafter until October 1, 1919, when the last payment would be due. The deferred payments were to bear interest at seven per cent from February 1, 1915, payable annually. Upon payment by plaintiff to the two installments due in May and October, 1915, she was to give notice to defendants, who, within ten days thereafter were to deliver to her an abstract disclosing a merchantable title. If the title shown by the abstract should prove defective, and, within thirty days after notice by plaintiff, defendants should fail to remedy the defect, all payments made by plaintiff were to be refunded to her, unless she should elect to accept the defective title. Upon receipt of the installment of $4,000, the installment of $1,000 being paid, the defendants were to execute and deliver to the plaintiff a warranty deed to the lands, together with a bill of sale of the personal property. Thereupon plaintiff was to execute and deliver to the defendants promissory notes for the installments of $5,000 and secure them by a mortgage upon the lands and a chattel mortgage upon the personal property. It was stipulated that the plaintiff might thereafter sell any or all of the personal property free from the lien of the chattel mortgage, provided she should pay to the defendants eighty per cent of its value. Upon the execution and delivery of the notes and mortgage, the defendants were to deliver possession of the lands and personal

property. Until that time defendants were to retain exclusive possession. Time was made of the essence of the contract, and in case of default by plaintiff in making any of the several payments or in meeting any of the obligations assumed by her, defendants could, at their option, by giving plaintiff sixty days' notice, terminate the contract; whereupon all payments made should be forfeited to the defendants. The contract contains a list of the personal property which was to go with the lands. In a memorandum attached to the contract other lands, which had been by mistake omitted, were included. It was further recited that the expense of "running and maintaining" the ranch until it should be delivered to plaintiff was to be paid by her; that defendants were to have the exclusive management and control until the deed and bill of sale provided for in the contract should be executed and delivered to plaintiff; that the defendants were to give plaintiff credit for all moneys "derived from the sale of cream," *etc.;* and that the defendants were to use any hay and grain on the ranch at the date of the contract, for the purpose of feeding the stock, without being required to replace any of it upon delivery of the property to the plaintiff.

On March 3, 1916, a supplemental contract was made, which, after reciting as reasons for it that the plaintiff had made default in the payment of certain installments of the purchase price, and was desirous of having the time of all payments extended in order that she might be able to meet them, provided "that the time in which such payments may be made" is extended for the term of six months from the dates at which they should become due as named in the original contract; that "the payments now due and in default shall be and they are hereby extended" for the full term of six months from this date; that the time herein granted shall in no way alter any of the other provisions of the original contract as they now stand; that the defendants, being in possession thereof, should retain exclusive management and control of the property and care for and maintain it with due regard for its preservation; and that "the loan of $1,000 made this day to the second party should be repaid to

said first parties on or about six months from the date thereof, and the same is to be and is hereby made a part of the next payment to be mentioned in said option to purchase contract, * * * and to bear the same rate of interest as provided in said contract." The contracts are attached to and made a part of the complaint, being referred to as Exhibits "A" and "B."

The complaint is very long, and contains so many vague, inconsistent and contradictory statements and recitals of immaterial matter that it is difficult to make an intelligible synopsis of them or ascertain upon what theory plaintiff bases her claim of relief. We gather from the argument of counsel that the action is one for money had and received, on the theory that the defendants violated the contract, thus giving the plaintiff the right to abandon it, and to recover what she has paid, including the expense of conducting the operations on the ranch. The following summary will suffice for present purposes:

After reciting the making of the contract with the memorandum attached to it, it is in brief alleged that the plaintiff, through her agent and attorney in fact, before signing the contract inspected the real property; that the defendants represented to the plaintiff's said agent that the buildings and improvements were situated on the lands and were a part of them; that the plaintiff and her attorney had no experience whatever in the ranching business, and relied upon the representations of the defendants; that plaintiff made no inspection or inventory of the stock and other personal property, but relied upon the representations of defendants as to the amount and value of it; that defendants further represented that on account of the inexperience of the plaintiff and her agent in the ranch business they would assume the entire management and control of the ranch and property until the deed and bill of sale should be delivered to the plaintiff; that all the proceeds of the sale of cream and personal property sold off the ranch out of that listed in the contract should "be credited to the plaintiff"; that plaintiff and her agents should have possession of the said (ranch) property for the purpose of residing thereon and looking after

the personal property and becoming familiar with the same; that the defendants made these representations, knowing that the dwelling-house ostensibly on said ranch was not wholly situated thereon; that the lines represented to be the boundaries of the lands were not in fact the boundaries of the same; that the lands were not situated where they were represented to be; that the number of cows was represented to be forty, whereas the number was not to exceed twenty; that it was represented that there were 225 tons of hay, whereas there were not to exceed seventy-five tons; that "many and numerous items of the property" represented to be upon the ranch were not to be found there; that the number of acres of timothy, alfalfa, and grain were falsely represented, in that there were only seventy-eight acres of timothy, whereas there were represented to be 100 acres; that there were represented to be twelve acres of alfalfa, whereas there were only nine; that there were other false representations "too numerous to mention"; that the plaintiff, relying on all these representations, entered into the said contract with defendants, and paid to them the sum of $5,000; that all the aforesaid representations were false, and were made for the purpose of inducing plaintiff to enter into the contract; "that on or about February, March, or April, 1915," as soon as the plaintiff found out that said representations were false, and before the second installment of $1,000 of the purchase price fell due, she demanded of defendants that they either give her credit for the amount of property found deficient or return the amount paid; that the defendants at that time promised and agreed to make settlement with plaintiff, and to credit the deficiencies on the · payment due on October 1, 1915; that with this understanding, on July 15, 1915, plaintiff paid $250 on the installment due on May 1, 1915; that the time of the payment of the remainder was to be extended until an accounting and settlement could be had, and the deficiencies made good by giving credit for the value thereof on the payments due from plaintiff; that about October 1, 1915, the defendants sold out of the personal property steers, range cows and milch cows of the value of $2,869.20; that

said amount has never been credited to plaintiff, though on November 24, 1915, she demanded that defendants account for the amount so received by them and for the deficiencies existing in the contract; that she was then able and willing to fulfill her part of the contract; that defendants failed and refused to make any settlement, and have always refused to do so. It is further alleged that on or about March 3, 1916, for the purpose of giving plaintiff and defendants further time in which to adjust their differences and for an accounting, and to permit defendants to make good the deficiencies in the warranties contained in the original contract, they entered into the supplemental contract of that date; that the defendants have failed and refused to comply with the contract "in many particulars," that they have refused to allow the plaintiff any rights on the ranch; that in June, 1916, the defendant Poetter threatened the life of Robert W. Crawford, plaintiff's attorney in fact, making many threats against him; that they attempted by force to drive said Crawford and his brother from the ranch; that on or about June 26, 1916, they gave these agents of plaintiff notice to quit said premises; that on or about July 28, 1916, they filed an action in the district court of Fergus county against plaintiff's said agents, alleging that the contract had been canceled and annulled on the part of defendants; that defendants have sold and disposed of property off of said ranch, and have made the fulfillment of the contract by plaintiff impossible in many ways; that said acts constituted a violation of the contract; that plaintiff and her agents have been forced to abandon said contract and the possession of the premises and all property agreed to be conveyed; that plaintiff and her agents, on account of these acts of defendants, are unable to comply with the terms of the contract; that defendants have received back all property, rights and interests which they agreed and contracted to sell to plaintiff, except the proceeds of the sale of cream and other products amounting to the sum of $1,825.88, which amount plaintiff has credited the defendants with in this action; that the plaintiff has received nothing from the premises and property, of any

kind whatever, except the proceeds herein accounted for, thereby restoring to defendants all the rights and property they agreed to convey; and that by reason of the terms of the contract regarding the payment of all running expenses of the ranch and on account of constant promises of the defendants that they would make settlement and restore the property missing and lost, and would manage the ranch and care for the same and credit plaintiff with "all receipts off said ranch upon the payments due from plaintiff," the plaintiff was led to make constant payments for the running expenses of the ranch up to February, 1916; "that plaintiff has paid on that account the total amount of $3,726.21; that no part of said sum has been repaid except the sum of $1,000, paid on or about March 6, 1916, as in Exhibit 'B' set forth," which was used to pay the running expenses of the ranch, and the further sum of $1,825.88, received by plaintiff from the sale of products of the ranch while she had charge of the same, thus making her total receipts $2,825.88, leaving a balance due plaintiff from defendants, on account of said expenses, of $910.33; that the sum of $910.33, and the sum of $500, with interest thereon from January 12, 1915, at eight per cent per annum, and the said sum of $250, with interest thereon at eight per cent per annum from July 6, 1915, were the amounts paid out for the use and benefit of the defendants; that these amounts were paid by plaintiff and received by defendants on account of the statements and representations that the contract would be fulfilled by defendants, which were believed and relied on by plaintiff, and that on account of the violation of the said contract by defendants, the plaintiff was unable to fulfill the same, and that the said sums and the whole thereof are still due the plaintiff and unpaid, though often demanded.

When we come to examine the complaint, reading it in the [11] light of the terms of the contract as modified or explained by the supplemental agreement, such of the allegations as are contradictory of, or inconsistent with, these writings or the engagements of the parties as expressed therein must be disre-

garded as immaterial. All the allegations charging false representations as to the boundaries and situation of the lands, the number of acres of hay and grain, the number of cows, number of tons of hay, *etc.*, fall in this class. It appears that as early [12] as April, 1915, all of these representations were known to plaintiff to be untrue. It is alleged that it was then agreed that the deficiencies should be made good by the defendants by giving plaintiff credit on the payment due under the terms of the contract on October 1, 1915. This was in effect a settlement of the alleged fraud, because a new understanding was then had. The plaintiff, with full knowledge of the falsity of the representations, ratified the contract, and thus put it out of her power to assert its invalidity. (*Waite* v. *Shoemaker,* 50 Mont. 264, 146 Pac. 736; 13 C. J. 394, 395.) She could not thereafter rescind it on the ground of the false representations and recover the payments already made. Besides, by the supplemental contract entered into on March 3, 1916, she again ratified the original contract, and recognized it as in full force, except as it was by express agreement then modified. By this agreement also she deprived herself of any right of action because of the fraud. Furthermore, it appears that at that time she obtained [13] a loan from the defendants of $1,000 without mention of the several alleged breaches of the original contract prior to that time or the amounts for which defendants had failed to give her credit. The allegations setting forth a failure of defendants to give plaintiff credit for the proceeds of sales of portions of the property theretofore made are inconsistent with the position she then assumed. The presumption attaches, either that the allegations in this regard are false, or that plaintiff had determined to waive the wrongful appropriations of the property in order to obtain the accommodation extended to her at that time. It is contrary to the experience and observation of mankind that one to whom another is indebted will borrow money from his debtor upon a promise to repay him, and at the same time make no mention of a debt claimed to be due from the debtor. The presumption arising from such a transaction is that the lender

is not indebted to the borrower.  (*J. I. Case Machine Co.* v. *Hamilton,* 55 Mont. 276, 176 Pac. 152.)

Absence from the writing of any mention that the extension of time of the payments was made for the purpose of enabling [14]  the parties to arrive at a settlement of their differences raises a presumption that they had no such purpose in view. The recitals therein that the purpose was to allow the plaintiff ample time to meet and make the payments precludes the idea that there was any other purpose, and since the complaint contains no allegation impeaching this agreement on the ground of mistake or other imperfection (Rev. Codes, sec. 7873), the presumption is conclusive that the writing expressed all the engagements then made by the parties.

In view of the express stipulation, both in the original and supplemental contracts, that the defendants were to have [15]  exclusive possession and control of the lands and property until the deed should pass to plaintiff, the averments that the defendants violated the contract, by excluding plaintiff and her agent from possession, are also wholly immaterial.  The same may be said of the allegations that the defendants threatened the life of plaintiff's agent; that they attempted by force to drive the agent and his brother from the land; and that they brought an action against these agents, alleging that the contract had been annulled and canceled.  In the absence of allegations showing a special arrangement in this behalf aside from the written contract, neither the plaintiff nor her agents were entitled to possession of the lands, nor any part of the personal property.  The averment that in an action against the agents the defendants alleged that the contract had been canceled and annulled is not tantamount to an allegation that the defendants had, in fact, canceled or annulled it.  None of these facts furnish · any basis for the conclusion that plaintiff and her agents were forced to abandon the contract on their part and the possession of the property, thus entitling plaintiff to demand that the defendants refund to her payments made to them and moneys advanced to them to pay the expenses of the operation of the

ranch.   What property was sold, if any at all, after March 3, 1916, is not disclosed.   If the sales were of cream and similar dairy products referred to in the contract, defendants were within their rights in making these sales.   Again, though defendants were bound to credit plaintiff with the proceeds of these sales, according to plaintiff's own claim, the very purpose of the agreement of March 3, 1916, was to enable the parties to make settlement of these matters, and defendants were allowed until the end of six months to make settlement.   This action was commenced on August 11, 1916, before the expiration of the six months.   The allegations in this regard are too vague, indefinite and contradictory to show a violation of the contract justifying the abandonment of it by the plaintiff.   There can be no question that upon a breach by the vendor of a contract to convey, [16] the vendee can abandon the contract and sue for the amount paid, as for money held by the vendor for his use and benefit.   The facts alleged here, however, do not make out a case upon which relief may be had upon this theory, or, indeed, upon any other recognized theory.   It therefore follows that the complaint wholly fails to state a cause of action, and that the judgment was void.   For this reason the order is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY, PATTEN and COOPER concur.