MUNDT ET AL., APPELLANTS, v. MALLON ET AL., RESPONDENTS.

(No. 7,690.)

(Submitted January 24, 1938. Decided February 17, 1938.)

[76 Pac. (2d) 326.]

*Mr. Harry L. Burns,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. D. L. Blackstone, Mr. D. J. Sias* and *Mr. George E. Hurd,* for Respondents, submitted a brief; *Mr. Hurd* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs, as trustees for the creditors of the Farmers National Bank of Chinook, brought this action to recover the principal and interest on four promissory notes executed by defendants and payable to the bank. The complaint contained four causes of action, each being based upon a different note. The first was based upon a note dated November 28, 1932, in the sum of $1,000, payable May 29, 1933; the second upon a note of the same date, in the same sum, and payable at the same time; the fourth upon a note of the same date and payable at the same time, but in the sum of $77.80; the third was based upon a note dated January 30, 1933, in the sum of $500 and payable six months from date. Each note bore 8 per cent. interest, which was demanded in the complaint together with an attorney's fee in the aggregate of $625.

Defendant Sivertsen filed a separate answer, in which he denied consideration passing either to him or to the comaker Mallon for the notes involved in the first, second, and fourth causes of action, but admitted liability on the third cause of action. Mallon answered, admitting execution of the notes, the corporate capacity of the bank, the appointment of the trustees, and the employment by plaintiff of an attorney, and generally denied the other allegations of the complaint. He then pleaded a counterclaim, the substance of which was that on October 29, 1930, he and defendant Sivertsen owed the bank $11,800 and that on that day Sivertsen owed him that amount, and that Sivertsen and his wife executed to him a note in that amount, secured by a second mortgage on approximately 3,000 acres of land; that, as additional security to the bank, Mallon en-

dorsed the note and delivered it and the mortgage to the bank with the agreement that the bank would record it and this the bank failed to do until June 1, 1933; that in the meantime, and prior to June 1, 1933, Sivertsen and his wife executed and delivered a deed to the property to their son, which was placed of record prior to June 1, 1933; that the land was worth $15,000, and the second lien, had it been recorded, would have been worth $8,000; that Sivertsen and his wife are insolvent; and that Mallon was damaged by the bank's failure to record the deed in the sum of $8,000. Mallon asked judgment for that amount less any amount which may be found due to plaintiffs.

The reply put in issue all the material allegations of new matter in the answers, and alleged affirmatively that the lands covered by the mortgage from Sivertsen and his wife to Mallon were of the reasonable value of $10,000. The reply to the answer of Mallon also alleged that Mallon ought not to be permitted to rely upon his alleged counterclaim because he knew that the mortgage made by Sivertsen and his wife to him was not recorded prior to the making of the note set out in the third cause of action, and for the further reason that on or about February 18, 1933, and after knowing that the mortgage was not recorded, he admitted in writing the indebtedness to the bank here sued upon.

The evidence disclosed that defendants Mallon and Sivertsen were running a band of sheep jointly from October, 1930, until February, 1933, and that the bank was advancing them money for their operations. On October 29, 1930, defendants were indebted to the bank in the sum of $11,800. This was evidenced by a note in the sum of $10,000, and another in the sum of $1800. Defendant Mallon then paid off the $1800 note. Sivertsen then owed Mallon $11,800, for which he gave a note in that amount and a second mortgage covering about 3,000 acres of land to secure its payment. This note was endorsed by Mallon and delivered with the mortgage to the bank and which, according to the evidence most favorable to defendant Mallon, the bank's cashier agreed to record. Shortly thereafter defendants, with the cooperation of the bank's cashier, borrowed $9,000

from the Northern Livestock Company. The purpose of the loan was to reduce or pay off the indebtedness of defendants to the bank. This loan was accomplished in July, 1932. The notes sued upon in the first, second, and fourth causes of action, according to plaintiffs' evidence, represented the indebtedness of defendants to the bank after the indebtedness was reduced by application of the proceeds of the loan made from the Northern Livestock Company.

On December 27, 1932, Sivertsen and his wife deeded the property which had previously been mortgaged to Mallon to their son. The grantee testified that he had no knowledge of the existence of the mortgage to Mallon. The deed was recorded on January 4, 1933. The mortgage to Mallon was not recorded until June 1, 1933.

The evidence shows that the bank delivered the mortgage to D. J. Sias, attorney for Mallon, on or about January 21, 1933, and that thereafter, and on January 30, 1933, Mallon signed the note for $500, being the one involved in the third cause of action, and on February 18, 1933, presented a property statement to the bank, admitting the indebtedness to the bank sued upon here and made no mention of his claim against the bank.

The evidence bearing upon the value of the Sivertsen lands was conflicting. There was a prior mortgage on the land in the sum of $9,000.

The jury returned a verdict for plaintiffs in the sum of $500. To this the court added $200 as attorney's fee, and judgment was accordingly entered. Plaintiffs' motion for new trial was denied, and they appealed from the judgment.

The principal contentions made here by plaintiffs are that the court erred in refusing to give their offered instruction No. 5, reading: "You are instructed herein that the plaintiffs have set forth and alleged that the defendant, Adam Mallon, knew on or about January 30, 1933, that the said mortgage, securing the said note of Theodor and Anna Sivertsen in the sum of Eleven Thousand Eight Hundred Dollars ($11,800)

had not been recorded and that he thereafter executed the note sued upon in the third cause of action herein, and that likewise on or about February 18, 1933, he admitted in writing his indebtedness to said bank, and if you believe from the evidence herein that the said Adam Mallon did in fact know on or about January 30, 1933, that said mortgage had not been recorded, and that he failed to make any protest or claim by reason thereof and that such failure to make protest was not negligence or oversight on his part, then the law implies that he consented to the failure of the bank to record the mortgage, if there was any agreement on the part of the bank to record the same, or if there was any duty of the bank to record the same, and you should accordingly find for the plaintiffs herein as to the defendant, Adam Mallon.'' And then offered instruction No. 6, reading: ''You are instructed herein that if you believe from a preponderance of the evidence that on or about October 29, 1930, the Farmers National Bank of Chinook, Montana, did agree to record that certain real estate mortgage securing the note of Theodor Sivertsen and Anna C. Sivertsen to the defendant, Adam Mallon, and that if thereafter and on or about January 30, 1933, the defendant, Adam Mallon, discovered that the said bank had failed to perform its agreement by recording said mortgage and that he, the said defendant, Adam Mallon, then executed and delivered to the said bank the note sued upon in the third cause of action herein, which he, the said defendant, Adam Mallon, has alleged to have been a part of the same transaction, and/or he likewise on or about February 18, 1933, acknowledged his indebtedness to said bank in writing and failed at either of said times to protest the failure of the bank to perform its alleged agreement and that such failure to protest on his part was not mere negligence or oversight, then you are to conclude that the said Adam Mallon had waived any rights that he might have had against the said Farmers National Bank by reason of its alleged failure to record said mortgage and you are accordingly to find for the plaintiffs herein.''

248

Plaintiffs contend that defendant Mallon waived his right to assert a counterclaim against the bank and that he is also estopped from asserting the counterclaim.

"A waiver consists of the intentional relinquishment of a ▇ known right. (27 R. C. L. 904.)" (*Osborne* v. *Supreme Lodge, etc.,* 69 Mont. 361, 222 Pac. 456, 460; *State ex rel. Bingham* v. *District Court,* 80 Mont. 97, 257 Pac. 1014.)

In *Northwestern F. & M. Ins. Co.* v. *Pollard,* 74 Mont. 142, 238 Pac. 594, 596, this court adopted the following definition of "Waiver" given by Bowers on the Law of Waiver: "Waiver is the voluntary abandonment or surrender by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits. * * * If the person possessing such right so express himself by agreement or so conduct himself in relation to the right as to manifest an intention to forego its benefits, he will be held to have waived the right and cannot later insist upon it. Or, as it has been said, waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, a party would have enjoyed. It may be proved by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by neglecting and failing to act, as to induce the belief that it was his intention and purpose to waive." It then declared the rule as to how waiver can be shown, as follows: "The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. Since intent is an operation of the mind, it should be proved and found as a fact, and is rarely to be inferred as a matter of law. An intention to make the waiver claimed should clearly be made to appear by the evidence; and the best evidence of intention is to be found in the language used by

the parties. The true inquiry is what was said or written, and whether what was said indicated the alleged intention. The secret understanding or intent of the parties is immaterial on the question of waiver.''

The general rule is that an intention to waive a right or advantage must be shown clearly and convincingly, and mere acts or omissions will not prove such intention unless they are ''so manifestly consistent with and indicative of an intent to voluntarily relinquish a then known particular right or benefit that no other reasonable explanation of the conduct is possible.'' (67 C. J. 311.)

It has been held that, when one gives his note to another, a rebuttable presumption arises that the payee is not indebted to the maker. (*J. I. Case Threshing Mach. Co.* v. *Hamilton*, 55 Mont. 276, 176 Pac. 152; *Crawford* v. *Pierse*, 56 Mont. 371, 185 Pac. 315; *Kramer* v. *Schmidt*, 62 Mont. 568, 206 Pac. 620.) An instruction embracing this principle of law would have been proper. However, the instructions offered here were not of this character.

The effect of the offered instructions here involved was to preclude recovery on the counterclaim as a matter of law, if certain facts were found, regardless of the actual intent of the defendant Mallon at the time he made the note in question and furnished the property statement. The offered instructions were properly refused so far as the question of waiver is concerned.

The next question then is, Was defendant Mallon estopped from asserting the counterclaim, or, more accurately, Should the offered instructions have been given under the doctrine of estoppel?

Generally speaking, estoppel arises when a party by his acts, conduct, or acquiescence has caused another in good faith to change his position for the worse. (*Lindblom* v. *Employers' Liability Assur. Corp.*, 88 Mont. 488, 295 Pac. 1007; *Mettler* v. *Rocky Mountain Sec. Co.*, 68 Mont. 406, 219 Pac. 243.) The following six essential elements have been held necessary to constitute an equitable estoppel: ''1. There must be conduct—

acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.'' (*Lindblom* v. *Employers' Liability Assur. Corp.*, supra.)

There is no evidence in the record to show that the bank in ▇ any way changed its position by reason of any act or conduct of defendant Mallon with relation to the existence or nonexistence of a counterclaim against the bank. The $500 loan was made by the bank to defendants before the defendant Mallon furnished the property statement. After the property statement was furnished, the bank did not act thereon to its prejudice in any manner. At the time the $500 loan was made, there was no duty resting on defendant Mallon to speak with reference to his counterclaim. The $500 loan was to enable Sivertsen to meet expenses of caring for the sheep on which the bank itself held a mortgage and to prevent their sacrifice at ruinous prices.

The court properly refused to give the offered instructions.

Plaintiffs assign error in sustaining defendants' objection to certain offered testimony. At the argument of this cause, plaintiffs' counsel conceded that this point alone would not constitute a ground for disturbing the judgment. We have given con-

sideration to the question and find that the evidence was properly excluded.

Plaintiffs assign as error the refusal of the court to grant a new trial. The only contentions made on this point are those already considered and which we have found to be without merit. Accordingly the judgment must be, and is, affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.