**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Plaintiff-Appellee,**

v.

**Linda WHITE and John Lansford as Guardian of Linda White, Defendants-Appellants.**

No. 76–2695.

United States Court of Appeals, Ninth Circuit.

Oct. 27, 1977.

James S. Craven, Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll, Spokane, Wash. (argued), Ronald Waterman, Gough, Booth, Shanahan & Johnson, Helena, Mont., for defendants-appellants.

Shelton C. Williams, George, Williams & Benn, Missoula, Mont., argued, for plaintiff-appellee.

Before BARNES and TRASK, Circuit Judges, and BURNS, District Judge.*

BARNES, Senior Circuit Judge:

## I. FACTS

The facts in this case are not in dispute. On April 4, 1974, the appellee, State Farm Mutual Insurance Company (hereinafter State Farm) issued a six month automobile liability insurance policy to Steven W. Wilcox "effective April 4, 1974 until terminated". The policy was sold to Wilcox by Tom Larson, a self-described independent contractor who writes insurance policies for State Farm. Wilcox signed an application on April 4, 1974, and made a partial payment of $90.00 toward the total premium for a six months policy of $197.30. The "policy period" was 04–04–74 to 10–04–74. The "Declaration" section of the policy provides that the policy period shall be "as shown under 'policy period' and for such succeeding periods of six months each thereafter as the required renewal period is paid by the named assured on or before the expiration date of the current policy peri-

od." The notice stated: "This is the only notice you will receive prior to date premium is due." Wilcox received the notice on October 12, 1974.[1] The delay between the mailing of the notice and its receipt resulted from Wilcox' absence from his mailing address at his job in a remote area of Montana. Two other notices were also sent to Wilcox, one on October 9, and one on October 28. However, he did not receive them until after the accident which is the subject of the present dispute, because he was again picking up his mail on irregular occasions.

Wilcox did not make any payment to renew his policy. On October 29, 1974, he was operating the truck covered by the policy near De Borgia, Montana. He was involved in a collision with another vehicle, and several persons were injured. Several suits were filed against Wilcox, including one by the appellant, Linda White, who was paralyzed from the neck down as a result of the incident. State Farm filed a diversity action in federal court seeking a declaratory judgment that Wilcox was not covered by State Farm's policy on October 29, 1974, when the accident took place. Pending resolution of this matter, the suits against Wilcox have been stayed.

The district judge concluded that the policy expired by its terms on October 4, 1974, and that the policy was never renewed by Wilcox. He also concluded that State Farm was not estopped from denying coverage, that State Farm was not required to give notice that the policy had expired, and that the insurance contract was not ambiguous. State Farm was therefore held not to have any obligation to defend Wilcox from any lawsuit arising out of the October 29, 1974 accident, or to pay any benefits under the policy as a result of the accident. (R.T. 141–46). Linda White has appealed. We now have jurisdiction under 28 U.S.C. § 1291.

---

\* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. The district court's findings stated that he received it on October 2, 1974, but this is apparently a typographical error, because Wilcox testified that he received it on October 12th.

## II. ISSUES

The parties have agreed upon the following issues on appeal:

(1) Did State Farm fail to comply with its own policy provisions and the laws of Montana regarding cancellation and non-renewal of its automobile liability insurance policy?

(2) Is State Farm estopped to deny coverage by reason of the acts of its agent?

## III. DISCUSSION

■ A. White's first argument is that State Farm failed to give notice of cancellation to Wilcox, as required by Montana law and by the insurance policy. However, this argument is based on a faulty premise, i. e., that the policy was in fact cancelled. This contention the trial court did not accept. "Actually, the policy expired by its own terms; it was not cancelled." (C.T. 145, conclusions VII).[2] The Montana statutes on which White relies (R.C.M. 40–4405, 40–4408) apply only to cancellation of a policy, not to its termination. The situation involved here, where the policy terminated by its own terms for failure of the insured to renew, is controlled by R.C.M. 40–4409, which does not require any notice to the

policy-holder when the reason for the non-renewal of the policy is the holder's failure to pay the renewal premiums.[3] Therefore, there was no need for State Farm to give notice to Wilcox. Similarly, the portions of the policy on which White rests her argument that notice was required apply only to a cancellation, not to an expiration or termination at the end of the policy period.

■ B. White also argues that State Farm's attempt to terminate coverage was a cancellation or, in the alternative, that the policy was so ambiguous as to be tantamount to a cancellation. The only basis for its argument that the policy was cancelled is a letter written by a State Farm adjuster to appellant's attorneys stating that the policy "was cancelled on October 4, 1974, for non-payment of premium." (App. Br., Appendix, p. 22). In all probability, the adjuster mistakenly used the word "cancelled" rather than the more accurate term "expired." White argues that this is an admission similar to that involved in *Meagher v. Benefit Trust Life Ins. Co.*, 160 Mont. 333, 502 P.2d 415 (1972). *Meagher*, however, involved communication from the insurance company which in effect indicated to the insured that his policy was paid-up and non-cancellable. The court

2. As noted by the district judge:
"'Cancellation' means termination of the policy prior to expiration of the policy period by act of one of the parties to the agreement: 'termination' refers to the expiration of the policy by lapse under its own terms. *Minnesota Mut. Life Ins. Co. v. Cost*, 72 F.2d 519 (10th Cir. 1934); *Johnson v. Metropolitan Life Ins. Co.*, 107 Mont. 133, 83 P.2d 922 (1938); *Peterson v. Truck Ins. Exchange*, 65 Wisc.2d 542, 223 N.W.2d 579 (1974); *U. S. F. & G. Co. v. Security F. & I. Co.*, 248 S.C. 307, 149 S.E.2d 647 (1966)." (Record, p. 145, conclusion VII).

3. R.C.M. 40–4409 sets out the notice requirements for nonrenewal by an insurance company, but it also provides:
"This section shall not apply where the named insured has failed to discharge when due any of his obligations in connection with the payment of premiums for the policy, or the renewal therefor, whether payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit. This section shall not apply in any of the following cases:

(a) If the insurer has manifested its willingness to renew.
(b) In case of non-payment of premium . . . ."
§ 40–4409, Revised Codes of Montana.
*Evans v. State Farm Mutual Auto Ins. Co.*, 16 Wash.App. 704, 559 P.2d 574 (1977) relied on by appellant is not apposite here. In it, the trial court found in Finding of Fact 8(a) that plaintiffs had been led to believe, reasonably, that they were insured because of a course of conduct over the years which waived strict compliance with policy terms, and (b) because the retention by the company and its application toward the renewal premium of a $7.60 dividend and a $2.80 credit balance indicated that Evans was entitled to a cancellation notice. On a gross six months premium of $86.90 (or $14.48 per month, or $.48 per day) the $7.60 bonus plus a $2.80 credit equals $10.40 or $.2183 per day. From December 26, 1971 to the date of the accident on January 17, 1972 was 22 days, or $4.81 applied on the premium. There was nothing to apply as a premium payment in this case.

held that this admission bound the insurer, even though the policy was in fact cancellable. Here the letter was not sent to Wilcox. It was written to White's attorneys *after* the accident and after claim had been made on behalf of defendants-appellants. There was no reliance by any party to the insurance contract on the mistaken use of the word "cancelled".

C. In the alternative, White suggests that the policy is ambiguous. The district court specifically found that the insurance contract was not ambiguous, and furthermore, found that Wilcox knew that the policy would expire after six months unless he renewed it. (R.T. 145–46, conclusion VIII). Since Wilcox could not reasonably have expected coverage after October 4, 1974, and since he received a notice that his premium payment was due, it is difficult to see how any ambiguity that might exist with regard to cancellation would affect Wilcox. In addition, the contract provisions on which White relies (See Appellant Br. pp. 9–10, 14) do not appear to be ambiguous. Montana law on the subject is quite clear,[4] as the Montana Supreme Court noted in *Universal Underwriters Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 166 Mont. 128, 135, 531 P.2d 668, 673 (1975):

> "The policy of insurance between Universal and Cislo Chevrolet is a contract, and subject to applicable contract law of Montana. The language of a contract governs its interpretation, if the language is clear and explicit. Section 13–704, R.C. M.1947. The intention of the contracting parties is to be ascertained from the contract itself, if possible. Section 13–705, R.C.M.1947. Where the language of an insurance policy admits of only one meaning there is no basis for interpretation of the policy coverage under the guise of ambiguity."

In accord is *Holmstrom v. Mutual Benefit Health & Accident Ass'n*, 139 Mont. 426, 428–29, 364 P.2d 1065, 1066 (1961), where the judge stated:

> "Ambiguity does not exist just because a claimant says so. It can only exist where the wording or phraseology of a contract is reasonably subject to two different interpretations."

Here, there appears to be no basis for a finding of ambiguity. The policy set forth the policy period, and the fact that the policy would be renewed only if the renewal payment was made on time. Wilcox knew that the policy would be terminated if he did not pay the renewal premium on time. (Wilcox deposition p. 31). There is no indication that Wilcox thought that the policy would continue in effect until State Farm sent him a notice of cancellation, or until Larson contacted him, and the terms of the policy are not subject to differing interpretations on the issue. Therefore, White's arguments as to ambiguity must fail.

D. White's next argument is that the "doctrine of reasonable expectations" required State Farm do more than it did in this case to inform Wilcox that his policy was about to expire. Whatever the merits of this argument (and they are weak), White did not raise this argument in the district court. Therefore there is no need for this Court to consider the effect of the doctrine. *Michael Regan Co., Inc. v. Lindell,* 527 F.2d 653, 659 (9th Cir. 1975); *Rothman v. Hosp. Service of Southern California,* 510 F.2d 956, 960 (9th Cir. 1975); Moore's Federal Practice, Vol. 5A, ¶ 46.02, pp. 1902–1906.

E. White's final contention is that State Farm is estopped to deny coverage by reason of the acts of its agent, Larson. The district court specifically categorically rejected this argument (R.T. p. 144, conclusion V) on two separate grounds: (1) In Montana, estoppel requires, *inter alia,* a representation by the party against whom an estoppel is asserted and reliance on that representation by the party asserting the estoppel. *Mundt v. Mallon,* 106 Mont. 242,

---

**4.** Montana law differs from Arizona law, cited by appellant, due to differing terms in the involved statutes. *State Farm Mutual Automobile Ins. Co. v. O'Brien,* 24 Ariz.App. 18, 535 P.2d 46 (1975).

249–50, 76 P.2d 326 (1938).[5] *Accord, Hustad v. Reed,* 133 Mont. 211, 223, 321 P.2d 1083 (1958). (2) Neither under the terms of the policy or the laws of Montana did Larson have authority to authorize waiver of, or a change in, the policy.[6] The judge concluded that neither of these requisites were satisfied prior to the expiration of the policy on October 4, 1974. As a result, he concluded that Larson was not required to personally notify Wilcox that his policy had expired.

We find no reason why the district court's conclusion should be overturned by this Court. There was no indication in Wilcox' deposition that he believed that Larson would personally contact him before the expiration of the policy, or that he relied on Larson's failure to contact him in deciding not to pay the renewal premium. On the contrary, Wilcox testified that he attempted to contact Larson prior to the accident. In short, the element of a representation and reliance simply have not been proven.

F. White finally suggests that Larson represented to Wilcox after his first failure to pay that his semi-annual payments would or could, be converted to monthly payments, and that it was because of this representation that Wilcox did not pay the renewal premium. However, this contention is undermined by the testimony of Wilcox himself, who testified that he told a representative of State Farm that Larson had actually told him to contact Larson when the issue of payments came up again, i. e., when Wilcox received his renewal notice.[7] Thus, it appears that the only representation by Larson was that monthly payment would, or could, be arranged when Wilcox contacted Larson about the renewal premium. Since Wilcox never did contact Larson, it is difficult to see how Wilcox could have reasonably believed that he was not required to pay anything in order to retain his coverage. In short, there is no basis for State Farm to be estopped from denying coverage.

■ The district court concluded that Wilcox' policy had expired prior to the accident, and we can find no legal reason why that conclusion should be disturbed on appeal. The policy was not cancelled, but rather expired by its own terms; since it was not cancelled, State Farm was not required to give Wilcox notice under either the insurance contract or the relevant Montana statutes. The contract is not ambiguous, and even if it were, Wilcox was not

5. In *Mundt,* the court set out all of the elements for an estoppel:

"Generally speaking, estoppel arises when a party by his acts, conduct, or acquiescence has caused another in good faith to change his position for the worse. [Citations omitted.] The following six essential elements have been held necessary to constitute an equitable estoppel: '1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.'"

106 Mont. 242, 249–50, 76 P.2d 326, 329 (1938), quoting from *Lindblom v. Employers Liab. Assur. Corp.,* 88 Mont. 488, 295 P. 1007 (1930).

6. R.C.M. 40–3717: *Policy must contain entire contract.*

". . . neither the insurer or any agent or representative thereof, nor any person insured thereunder, shall make any agreement as to the insurance which is not plainly expressed in the policy."

7. At the time his deposition was taken Wilcox could not remember exactly what Larson had told him with regard to the arrangements for monthly payments. However, he did admit that he had told a representative of State Farm that Larson had told him to contact Larson when the question of payments next arose. (Wilcox Deposition, pp. 17, 21).

misled by the ambiguity, since he knew that the policy would expire on October 4, 1974. Furthermore, State Farm even sent him a notice that his policy was about to expire. Lastly, State Farm was not estopped to deny coverage, since there was neither a representation nor reasonable reliance. The district court's decision can be overturned only if clearly erroneous. We cannot retry issues of fact nor supplant the district court's judgment with that of our own. We must consider the district court's findings as presumptively correct. We are required to take the evidence as a whole, and consider it in the light most favorable to appellees. *Smith v. James Irvine Foundation,* 402 F.2d 772 (9th Cir. 1968).

Therefore, the district court's judgment must be and is AFFIRMED in all particulars.