318 P.2d 230 (1957)
Matter of the ESTATE of John E. HOFMANN, Deceased.
DALY BANK & TRUST COMPANY, Executor, Respondent,
v.
The STATE of Montana, Appellant.
No. 9429.
Supreme Court of Montana.
Submitted May 16, 1957.
Decided October 23, 1957.
Rehearing Denied December 4, 1957.
*232 Forrest H. Anderson, Atty. Gen., Arnold H. Olsen, former Atty. Gen., N.A. Rotering, Sp. Asst. Atty. Gen., for appellant.
N. A. Rotering, Sp. Asst. Wade J. Dahood, Anaconda, for respondent.
J. B. C. Knight and Wade J. Dahood, Anaconda, argued orally for respondent.
Michael E. Ruane, Anaconda, amicus curiae.
HARRISON, Chief Justice.
This is an appeal by the State of Montana from a decree of distribution entered in the estate of John E. Hofmann, deceased. The decedent died November 27, 1948. At the time of his death he was a resident of Deer Lodge County, Montana. His last will dated July 31, 1948, was admitted to probate and letters testamentary were issued on December 24, 1948. On January 26, 1949, the district court by order appointed Roy A. Michaud and M.E. Ruane as attorneys for nonresident and foreign heirs under the provisions of section 10370, R.C.M. 1935, now R.C.M. 1947, section 91-4316. In such order the court provided "that the said attorneys shall also, on behalf of such persons, determine heirship in said estate, as provided by Chapter 139 of the Revised Codes of Montana of 1935."
On April 6, 1949, M.E. Ruane filed a petition for determination of heirship and in paragraph III thereof alleged: "That as such attorney and by reason of said appointment by the Court, as aforesaid, he is interested in the Estate of John E. Hofmann, *233 deceased, and qualified under the law to file a petition for determination of the heirship in the above entitled matter."
On the same date a notice fixing time and place for hearing petition to determine heirship was issued by the clerk, directed to the executor, its attorney, the persons named in the will as beneficiaries thereof, and all persons known or unknown who claim an interest in the estate, citing them to appear before the court on June 15, 1949, "then and there to exhibit in the manner provided by law, your respective claims of heirship, ownership or interest in said Estate, and to show cause * * * why the Petition should not be granted and a complete adjudication and determination of the heirship be made by the Court."
On April 6, 1949, an affidavit for publication of notice fixing the time and place for hearing petition to determine heirship was made and filed by M.E. Ruane, and on the same day the district judge made an order for publication of a notice. The notice was published as required by law, and proof of publication filed with the court.
On June 14, 1949, an appearance by devisees and legatees in proceedings for determination of heirship was filed, which was executed by Roy A. Michaud and M.E. Ruane, and in which appearance it is stated that the named persons "have filed in this Court, Powers of Attorney, in which they have constituted and appointed M.E. Ruane and Roy A. Michaud, giving unto said attorneys full power and authority to do and perform all and every act and thing, whatsoever requisite and necessary to be done in and about the premises, to all intents and purposes as they might or could do if personally present."
On July 20, 1949, a complaint to determine heirship was filed wherein it is alleged in paragraph II "That on the 15th day of June, 1949, the said Court duly made and entered an order in said proceedings establishing proof that notice had been served on all persons having or claiming any interest in the Estate of John E. Hofmann, deceased, and said order was duly made, given and entered upon the minutes of said Court."
Thereafter, on August 3, 1949, an answer was filed on behalf of certain resident heirs.
An admission of service on behalf of foreign heirs was filed on August 10, 1949, signed by M.E. Ruane and Roy A. Michaud, admitting service on behalf of the nonresident heirs.
On August 17, 1949, the separate answer of the executor and its attorney was filed. Replies to each answer were filed August 23, 1949. Decree determining heirship was made and entered by the court on September 27, 1950.
On August 26, 1953, the State of Montana filed objections to distribution in said estate upon the following grounds and reasons:
"I. That no proof has been made of reciprocity of inheritance between the United States and East Germany on the date of death of the decedent, to-wit: November 27, 1948.
"II. That no proof has been made of reciprocity of transfer between the United States and East Germany of the date of the death of the decedent, to-wit: November 27, 1948.
"III. That no proof of survival or identity has been made of the heirs, Martha Noak and Hans Lampert.
"IV. That no proof has been made that Martha Noak and Hans Lampert have changed their names to Hofmann, or made their home on the ranch in Deer Lodge County, Montana.
"V. That no proof has been made as to the identity or survival of any of the legatees named for special bequests listed as residing in the East Zone of Germany.
"VI. That the part of the residue of said estate consists of certain real property and mortgages on real property in the Counties of Silver Bow and Deer Lodge, State of Montana, and *234 that all of said residue goes to the residuary legatees and devisees, Martha Noak and Hans Lampert, neither of whom have been identified or proven to have survived the decedent, and neither of whom have complied with the conditions of said Will. That in the absence of proof of reciprocity, and in connection with the objections above stated, the residuary estate, as well as the legacies and specific bequests to alien heirs, escheat to the State of Montana, and under the governing statutory provisions, real property, and personal property such as mortgages, stocks, bonds, etc., are required to be sold by the Executor, and the proceeds of such sale escheated.
"Wherefore, the State of Montana prays that the petition of the Executor be disallowed, and that personal property in the form of bonds, stocks, notes and other property, as well as all real property and real estate mortgages, devised or bequeathed to alien heirs, be sold and converted into cash, and that the proceeds thereof be escheated according to the amount of the legacy of each foreign heir converted into cash. That the Executor thereafter be instructed to escheat the legacies of the foreign heirs under the disabilities claimed."
What action was taken upon the objections at that time does not appear in the record. On January 27, 1954, an amended petition for distribution of the estate was filed, and by order set for hearing on February 10, 1954. It was heard upon that date and a decree of distribution made and entered by the court, which decree in part provided as follows:
"That Section 91-520 of the Revised Codes of the State of Montana for 1947, as amended by Chapter 31 of the 1951 Legislative Assembly, and as further amended by the 1953 Legislative Assembly, entitled `Conditions Under Which Aliens in Foreign Country May Inherit', provides in Paragraph One thereof, that, `No person shall receive money or property, save and except mining property, as provided in section 25, article III, of the Constitution of the State of Montana, as an heir, devise and/or legatee of a deceased person leaving an estate or portion thereof in the State of Montana, if such heir, devisee and/or legatee, at the time of the death of said deceased person, is not a citizen of the United States, and is a resident of a foreign country at the time of the death of said intestate or testator, unless, reciprocally, the foreign country in question would permit the transfer to an heir, devisee and/or legatee residing in the United States, of property left by a deceased person in said foreign country'.
"That all of the above named heirs, with the exception of Mrs. Anna Edwards, Marichen, Noffsinger, Gretchen Noffsinger, now Gretchen Ogden, George Noffsinger, Helen Noffsinger, Gustav Jupe, Alfone Jupe, Anna Marie Altmann, and Mary Elizabeth Fahey, are not citizens of the United States, and are residents of the East Zone of Berlin, Germany, and are under the jurisdiction of Russia, who does not permit the transfer to an heir, devisee or legatee residing in the United States of property left by a deceased person in East Berlin, Germany."
The decree further provided:
"That under and by virtue of Section 91-520 of the Revised Codes of the State of Montana for 1947, as amended, all of the rest, residue and remainder of said Estate should be distributed and set over to the State Treasurer of the State of Montana, as trustee to be held in trust for a period of three (3) years from and after the creation of said trust for and on behalf of the following named heirs, devisees or legatees, to-wit:"
At the time of the hearing the court inquired:
"Previously the Attorney General of the State of Montana made objections *235 to the account and petition as previously filed  did he make objections to the amended account and petition?
"Mr. Knight: `No, he said he wouldn't do that, and all he asked was that he be given a copy of the decree. It is their position that the Executor should escheat the money to the State of Montana and that the personal and real property should be sold and converted into cash.
"The Court: Is he going to appeal that to the Supreme Court?
"Mr. Knight: He didn't say that he was.
"The Court: All right. The objection to the distribution of the estate made by the Attorney General of the State of Montana  the objections are overruled, and each and every paragraph of said objection is overruled. The minute entry will be made to the effect that Mr. McCaffery be advised of the action taken at this hearing."
On March 18, 1954, notice of appeal from this judgment and decree was filed by the attorney general of the State of Montana. The attorney general sets forth eight specifications of error as follows:
"1. That no valid appearance was made on behalf of the foreign heirs to the Petition for Determination of Heirship.
"2. That no valid appearance was made by the resident heirs to the Petition for Determination of Heirship.
"3. That no person authorized by law filed a Complaint for Determination of Heirship.
"4. That no person authorized by law filed an Answer on behalf of the resident heirs.
"5. That the Court was without jurisdiction to enter upon a hearing for determination of heirship upon the Complaint filed therein and the Decree Determining Heirship was a nullity.
"6. That the Court was without jurisdiction to order distribution based upon the Decree Determining Heirship.
"7. That the Court exceeded its jurisdiction under the law to distribute the legacies and bequests to foreign heirs in said Estate to the State Treasurer of the State of Montana in Trust.
"8. That the Court was without jurisdiction to distribute the land devised to foreign heirs and the residuary estate of the Decedent to foreign heirs to the State Treasurer of the State of Montana in Trust."
The first five specifications of error set out above attack the jurisdiction of the district court when it entered its decree determining heirship under section 91-3801 to 91-3803, R.C.M. 1947.
Before entertaining that specific issue certain fundamental propositions and well-settled rules of law must be stated.
It has been repeatedly held in this state that a decree of heirship is conclusive on the rights of the parties affected by the decree and has the same force and effect as does a final judgment. In re Baxter's Estate, 101 Mont. 504, 519, 54 P.2d 869; In re Giebler's Estate, 118 Mont. 44, 162 P.2d 368; In re Baxter's Estate, 98 Mont. 291, 300, 39 P.2d 186.
Section 91-3802, R.C.M. 1947, provides for an appeal from the decree of heirship within sixty days from the entry of the decree. No appeal was taken from this decree by the state within the time provided for, nor did the state interpose a motion for relief from the decree upon the grounds of mistake, inadvertence, surprise, or excusable neglect under section 93-3905, which is made applicable to probate proceeedings by section 91-4311. In fact no proceedings were instituted attacking the heirship proceeedings until August 26, 1953, where by inference the State of Montana attacked the decree in their objections interposed in court to the distribution of the estate. The attack made upon the decree on this appeal is the first time the question of jurisdiction of the district court to enter *236 the decree of heirship has been specifically raised and it constitutes a collateral attack on the decree.
"By `collateral attack' is meant `every proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio'. Burke v. Inter-State Savings & Loan Assn., 25 Mont. 315, 64 P. 879, 881 * * *." State ex rel. Delmoe v. District Court, 100 Mont. 131, 136, 46 P.2d 39, 42.
It has been well-settled in this state that a court will overturn a judgment on collateral attack only if the judgment is void on its face, and it appears affirmatively from the judgment roll that the court did not have jurisdiction or committed an act in excess of its jurisdiction. State ex rel. Thompson v. District Court, 57 Mont. 432, 188 P. 902; Burke v. Inter-State Savings & Loan Ass'n., 25 Mont. 315, 64 P. 879; Coburn v. Coburn, 89 Mont. 386, 298 P. 349; In re Ft. Shaw Irr. Dist., 81 Mont. 170, 261 P. 962; Frisbee v. Coburn, 101 Mont. 58, 52 P.2d 882. When however the judgment roll, upon its face shows that the court was without jurisdiction the judgment cannot be enforced. All proceedings founded upon it are invalid and ineffectual for any purpose and the judgment is open to collateral attack. Crawford v. Pierse, 56 Mont. 371, 185 P. 315. The court must have authority to render the particular judgment. In re Lockhart, 72 Mont. 136, 232 P. 183; Scilley v. Red Lodge-Rosebud Irr. Dist. 83 Mont. 282, 272 P. 543. However, mere absence from the record of papers which ought to be included within the judgment roll is not enough to make it appear affirmatively that the court had no jurisdiction, and it is presumed the court had jurisdiction of the cause and the parties. State ex rel. Delmoe v. District Court, supra.
Jurisdiction does not depend upon the sufficiency or fullness of the statement of a cause of action pleaded, nor is it of any importance collaterally whether the pleading does or does not state a cause of action, provided it sets forth a case within the court's powers. State ex rel. Delmoe v. District Court, supra, 100 Mont. at page 140, 46 P.2d at page 43. However if an examination of the complaint negatives conclusively the existence of a cause of action then of course the judgment is void and may be attacked collaterally. State ex rel. Delmoe v. District Court, supra; Hanrahan v. Andersen, 108 Mont. 218, 237, 90 P.2d 494; Crawford v. Pierse, supra, 56 Mont. at pages 376, 377, 185 P. at page 318. The following language of the Crawford case illustrates the last proposition:
"The district court is a court of general jurisdiction. It therefore has power to hear and determine all classes of cases, except petty cases, of which justices of the peace and police courts are by the Constitution (article 8, section 11) given exclusive cognizance. Though within this limitation it has jurisdiction, in a general sense, over all classes of cases, it can acquire jurisdiction of a particular civil case only by the filing of a written complaint (Rev. Codes [1907], section 6513, [now R.C.M. 1947, section 93-3001]), which, besides the formal parts, must contain a statement of the facts constituting the cause of action, in ordinary and concise language. Section 6532 [Rev. Codes 1907, now R.C.M. 1947, section 93-3202]. However clear and concise the statement of facts may be, if it does not disclose a case upon which the court may grant redress, jurisdiction does not attach. Even though it appears that the pleader has attempted to state a case of which the court has cognizance, still jurisdiction does not attach unless the allegations bring the complaint within the rule announced in County of Silver Bow v. Davies, [40 Mont. 418, 107 P. 81] supra. The *237 court cannot redress a particular wrong unless the facts constituting the wrong are made manifest to it in a written complaint, as provided by the statute. It is only by this means that its general power can be brought into activity in a given case. If the pleading is not sufficient to put the defendant in the wrong, the court cannot grant redress. A judgment based upon such a pleading is invalid. The pleading is in effect no more than a piece of blank paper. And, since when a judgment has been rendered on default, the complaint, with the memorandum indorsed upon it that default has been entered, the summons with the proof of service, and a copy of the judgment constitute the record (Rev. Codes [1907], section 6719 [now R.C.M. 1947, section 93-4801]), the record itself discloses the infirmity of the judgment. It is thus exposed to collateral attack at any time when it is sought to be made the basis of a right."
State ex rel. Delmoe v. District Court, supra, states that the rule is no different in default judgments than when both parties have appeared in court and made their respective claims.
The case of Thelen v. Vogel, 86 Mont. 33, 281 P. 753, sets down the proposition that a district court sitting as a probate court is still a court of general jurisdiction. However the court in that opinion, 86 Mont. at page 40, 281 P. at page 756, stated:
"Necessarily, as the legislature has provided a complete Code of `Probate Proceedings' (Chapter 19 to 57, Part IV, Code of Civil Procedure 1921 [now R.C.M. 1947, section 91-601 to 91-4322]), the jurisdiction of the district court is limited to, and depends upon, these provisions of the Code. In this sense its powers are `special and limited'; yet by implication such a court also possesses all the powers incidentally necessary to an effective exercise of the powers expressly conferred * * *.
"* * * In other words, the general jurisdiction of the district court, in such cases, [probate cases] is special and limited only in the sense that, in the exercise of that jurisdiction, the court is controlled by the statutory provisions governing its procedure, except as to the exercise of further powers necessary to effective exercise of granted powers * * *.
"* * * the limitation upon its jurisdiction merely restricts such a court to the exercise of probate powers which it possesses * * *." Citing numerous California cases to support the last statement.
In re Baxter's Estate, 101 Mont. 504, 54 P.2d 869, supra, cites the Thelen case approvingly, saying it had set down the correct rules governing the scope of jurisdiction of a district court sitting in probate.
In the case of In re Baxter's Estate, 98 Mont. 291, at page 300, 39 P.2d 186, at page 191, supra, that court added slightly to what was said in the Thelen case with the following language:
"By compliance with the statute, the court acquires jurisdiction `to make a decree in rem as to the ownership of the property which will be distributed by it'. In re Spriggs' Estate, 68 Mont. 92, 216 P. 1108." (Emphasis supplied).
In re Spriggs' Estate, supra, sets down the following rule:
"The provisions of section 10324, Rev. Codes 1921, [now R.C.M. 1947, section 91-3801] provide the method by which the court may acquire jurisdiction on the probate of the estate to make a decree in rem as to the ownership of the property which will be distributed by it. The same doctrine, `Expressio unius est exclusio alterius,' applies here, both as to the jurisdiction and the method of acquiring it."
The purpose of this court in going into the various cases defining the jurisdiction of a district court sitting in probate is to *238 show that such jurisdiction is actually confined to the statutory method enacted. While the court is still one of general jurisdiction, as to things probate, the court is bound to follow the statutory mandate set down. Without following that mandate and the statutory method of acquiring jurisdiction the court is without authority to act.
Before developing the analysis of this opinion further it would be well to set out the provisions of section 91-3801, supra, which are as follows:

"Any person claiming to be heir to the deceased, or entitled to the distribution in whole or in part of an estate may, at any time after the issuing of letters testamentary or of administration upon such estate, file a petition in the matter of such estate, praying the court or judge to ascertain and declare the rights of all persons to said estate, and all interests therein, and to whom distribution thereof should be made. Upon the filing of such petition, the court or judge must make an order directing service of notice to all persons interested in said estate, to appear and show cause, on a day to be therein named, not less than sixty days nor more than four months from the date of the making of such order, in which notice shall be set forth the name of the deceased, the name of the executor or administrator of said estate, the names of all persons who may have appeared claiming any interest in said estate, in the course of the administration of the same, up to the time of the making of said order, and such other persons as the court or judge may direct, and also a description of the real estate whereof said deceased died seized or possessed so far as known, described with certainty to a common intent; and requiring said persons, and all persons named or not named having or claiming any interest in the estate of said deceased, at the time and place in said order specified, to appear and exhibit, as hereinafter provided, their respective claims of heirship, ownership, or interest in said estate, to said court or judge, which notice shall be served in the same manner as a summons in a civil action; upon proof of which service, by affidavit or otherwise, to the satisfaction of the court or judge, the court or judge shall thereupon acquire jurisdiction to ascertain and determine the heirship, ownership, and interest of all parties in and to the property of said deceased, and such determination shall be final and conclusive in the administration of said estate, and of the title and ownership of said property, the court or judge must enter an order establishing proof of the service of such notice; provided, that whenever it appears to the satisfaction of the court or judge that such estate consists of personal property only, and upon application being made showing good reason therefor, the court or judge may, in its discretion, make an order directing service of said notice to all persons interested in said estate to be made by posting or publication, or both, for such shorter period as to the court or judge may appear proper and requisite." (Emphasis supplied).
It has been held under the above statute that proceedings must be started by petition before the court acquires jurisdiction. In re Spriggs' Estate, supra. Before the court acquires jurisdiction the plain language of the statute requires two things to be done: (1) A petition filed by any person claiming to be an heir entitled to distribution; and (2) Notice to all persons interested in the estate. See In re Baxter's Estate, supra, 98 Mont. at page 300, 39 P.2d at page 190. In the last case cited at page 297, of 98 Mont. at page 189 of 39 P.2d the court in answer to appellant's contention that the petition was insufficient stated: "In so far as the statute is concerned, all that the petitioner is required to show is that the petitioner *239 is an heir of the deceased, or entitled to distribution * * *." (Emphasis supplied).
California has a statute (section 1080, Probate Code) similar to ours in that it requires a petition filed by an heir, or one claiming distribution plus notice, before the court is vested with jurisdiction to determine heirship.
The California court, In re Estate of Van Deusen, 30 Cal. (2d) 285, 291, 182 P.2d 565, 570, held: "In such proceedings, however, a petitioner is not entitled to be heard unless he claims to be an heir, and when such a claim is made, `The court acquires jurisdiction to determine * * *'." The same rule was enunciated in Mallarino v. Superior Court, 115 Cal. App. (2d) 781, 252 P.2d 993, 995.
In re Thurnell's Estate, Cal. App. 19 P.2d 14, 19, following the rule of Montana cases circumscribing probate proceedings to those outlined by statute says: "Any act of the superior court sitting in probate which exceeds its special and limited jurisdiction [that is statuory probate jurisdiction] is void even where consented to by all parties concerned."
Pursuant to the reasoning of the above cases it follows that if from the judgment roll it affirmatively appears a court acted without jurisdiction the judgment is void and of no effect.
As was stated before section 91-3801, supra, required two things to be done to invoke the jurisdiction of the district court to determine heirship.
The first was the filing of the petition by an heir, or one seeking a distributive share in the estate. In the instant case the petition affirmatively states that the attorney, M.E. Ruane, filed the petition for the non-resident heirs. In that petition he states that he was duly appointed to represent the non-resident heirs and "That as such attorney and by reason of said appointment by the Court, as aforesaid, he is interested in the Estate of John E. Hofmann, deceased, and qualified under the law to file a petition for the determination of the heirship in the above-entitled matter." M.E. Ruane then signs the petition as petitioner. Although M.E. Ruane and Roy A. Michaud were appointed to represent the nonresident heirs named in the will by order of the court made the 26th day of January, 1949, this order did not vest them with the right to petition for heirship proceedings under section 91-3801. The statute categorically states that the petition shall be filed by the heirs or those entitled to distribution of an estate. The fact that the court allowed M.E. Ruane to file the petition does not vest the court with the requisite jurisdiction to proceed. As was said before the doctrine of Expressio unius est exclusio alterius applies as to the jurisdiction and the method of acquiring it. In re Spriggs' Estate, supra. Had the statute contemplated attorneys filing and making the petition it would have been an easy matter to provide for the alternative, but it does not.
In the instant case what appears from the record is that the court decided that certain nonresident heirs did not have representation in the probate of Hofmann's estate. Instead of requiring some written authority or power of attorney from the foreign heirs, appointing attorneys to act for them, the court, acting under section 91-4316, R.C.M. 1947, appointed M.E. Ruane and Roy A. Michaud, attorneys, to represent the foreign heirs. A recitation of "necessity" without more will not vest the court with the power to appoint a local attorney to represent foreign heirs. State ex rel. Hamilton v. District Court, 102 Mont. 341, 57 P.2d 1227. The manifest purpose of requiring written authority, before the attorneys for the foreign heirs proceed with the petition, is to protect those heirs represented. The petition for determination of heirship in the instant case has totally disregarded the statute which requires the heirs or one entitled to distribution to file the petition, or by implication one possessing written power of attorney from those heirs, filed with the court. It affirmatively appears from the face of the petition that no heir ever did file a petition and that they never did authorize M.E. *240 Ruane or Roy A. Michaud to represent them before the petition was filed. The whole proceedings were done outside of the scope of the statutory limitations set down by section 91-3801, therefore they were done without jurisdiction.
With reference to section 91-4316, R.C.M. 1947, under which the court made the appointment, it provides:
"At or before the hearing of petitions and contests for the probate of wills; for letters testamentary or of administration; for sales of real estate, and confirmation thereof; settlements, partitions, and distributions of estate, setting apart homesteads, and all other proceeedings where all the parties interested in the estate are required to be notified thereof; the court or judge may, in its or his discretion, appoint some competent attorney-at-law to represent in all such proceedings the devisees, legatees, or heirs, or creditors of the decedent, who are minors and have no general guardian in the county, or who are nonresidents of the state; and those interested who, though they are neither such minors nor nonresidents, are unrepresented. The order must specify the names of the parties, so far as known, for whom the attorney is appointed, who is thereby authorized to represent such parties in all such proceedings had subsequent to his appointment. The attorney may receive a fee, to be fixed by the court or judge, for his services, which must be paid out of the fund of the estate as necessary expenses of administration, and upon distribution may be charged to the party represented by the attorneys. If, for any cause, it becomes necessary, the court or judge may substitute another attorney for the one first appointed, in which case the fee must be apportionately divided. The nonappointment of an attorney will not affect the validity of any of the proceedings."
In State ex rel. Hamilton v. District Court, 102 Mont. 341, 57 P.2d 1227, 1229, supra, the above statute was drawn in question in the following manner. John Hamilton died in 1931, and on June 8, 1932, his will was admitted to probate. The district judge, without the application of any person interested, and without notice to or knowledge of any person, made an order in May, 1935, appointing one Ybarra, an attorney at law, to represent certain foreign heirs. The foreign heirs came forward to annul the appointment of Ybarra. The judge in his order recited that "The necessity therefor appearing to the satisfaction of the court * * *" the court would appoint Ybarra attorney for the foreign heirs. The foreign heirs contended the judge was without jurisdiction to appoint Ybarra. This court in holding the district judge had exceeded his jurisdiction made the following statements:
"It appears from the record that at the time the order was made appointing Ybarra, and at all subsequent times, none of the various proceedings enumerated in section 10370 [R.C.M. 1921, now section 91-4316, R.C.M. 1947], and which may occur within a probate proceeding, had been or were then pending. This statute does not contemplate the appointment of an attorney in every probate proceeding wherein there are absent heirs; it is only when the necessity arises. In any event, the necessity can only arise when some one of the proceedings enumerated in section 10370 is commenced * * *.
"The district court was without jurisdiction to make the original order, in that there was no showing of the necessity for the appointment of an attorney, as no proceedings were pending in which he could render any service to the court. The purpose of the statute, in a proper case, is to enable the court to secure the services of an attorney to protect the rights of those who are not otherwise represented in a proceeding pending for hearing. As soon as heirs or legatees are represented, the appointment made by the court should *241 be terminated. Certainly, the Legislature never intended that estates should be mulcted for the benefit of members of the legal profession * * * nor that the payment of an attorney fee to a resident attorney should be made a condition before an absent heir might receive an inheritance * * *." (Emphasis supplied).
What is apparent from the above language in the Hamilton case is that before the court may utilize the provisions of section 91-4316, supra, some proceeding enumerated in the statute must be initiated and be pending. The purpose of that requirement was clearly pointed out by the court in the Hamilton case. Some procedure enumerated by the statute must be pending in which notice to nonrepresented parties is required, the termination of which, without representation for the nonresident heirs, could prejudice their rights.
In the instant case the sole purpose of the appointment as it appears from the judgment roll is the institution of proceedings to determine heirship, not the representation of foreign heirs in the proceedings themselves. The purpose of the statute was never calculated to be utilized to initiate any proceedings, but merely to protect those parties enumerated once the hearings were pending.
In support of the Hamilton case see Estate of Roarke, 8 Ariz. 16, 68 P. 527, and In re Estate of Lux, 134 Cal. 3, 66 P. 30, both states then having statutes identical to section 91-4316.
In re Estate of Lux, supra, 134 Cal. at page 6, 66 P. at page 31, the following language is enlightening in view of the instant problem: "The court can no more appoint an attorney with authority to bind a person who is sui juris, to waive his rights, or concede claims made against him, or to institure proceedings for him, and incur costs chargeable to him, than it can do all these things without an attorney. And this, I think, indicates the functions of an attorney so appointed. The court can do nothing with the aid of the attorney which it could not have done without him * * *. As friend of the court, his function simply is to aid the court in conserving the rights of represented parties." (Emphasis supplied).
Another factor in this case is the lack of a showing of necessity. In the instant case it affirmatively appears from the judgment roll there was no necessity for the foreign heirs to institute the heirship proceedings since there were heirs in this country who could have filed the requisite petition. Nothing appears on the face of the record to show they refused to do so or were in some manner incapacitated. All the statute requires is that an heir or one seeking distribution initiate the petition, not that the burden rests solely on the shoulders of the foreign heirs. Since no proceedings were pending and it affirmatively appears from the judgment roll no necessity for the appointment existed, the court acted without its jurisdiction in appointing M.E. Ruane and Roy A. Michaud, attorneys to represent the foreign heirs.
The respondents in this case have wholly failed to make any showing that the district court was vested with jurisdiction. They have futilely clung to the arguments that the state's case was primarily a collateral attack on the judgment and therefore should be disallowed. However the defense of collateral attack is of little avail where, as here, the judgment roll affirmatively shows on its face that the court never was vested with jurisdiction because the requisite petition was never filed. The principles in the Crawford case, supra, relative to the sufficiency of the complaint, are equally applicable here. The petition on its face conclusively negatives the power of the court to render any relief or perform any functions pursuant thereto.
Since the decree of distribution was founded upon the void decree of heirship and the state made timely objection to the decree of distribution, the decree of distribution must be set aside until some valid proceedings determining heirship are instituted.
Although the above holding would adequately dispose of this case there is one other matter that we think ought to *242 be clarified. In the decree of distribution the court applied the provisions of section 91-520, R.C.M. 1947, as amended, in setting up a trust of the property bequeathed and devised to certain foreign heirs, the state holding as trustee. The decedent Hofmann died in 1948. As has been said many times in this state section 91-520, supra, affects substantive rights and is not to be applied retroactively. In re Giebler's Estate, 118 Mont. 44, 162 P.2d 368; In re Gaspar's Estate, 128 Mont. 383, 275 P.2d 656; In re Nossen's Estate, 118 Mont. 40, 162 P.2d 216, 217, state emphatically that the law at the date of death governs the vesting of property rights whether the decedent dies testate or intestate. In that case the court said: "It is well settled that rights vest under our statutes immediately upon the death of a testator [Citing numerous cases.] or upon the death of an intestate * * *."
In re Spoya's Estate, 129 Mont. 83, 282 P.2d 452, 454, where decedent died in 1949, unequivocally states: "Since this statute [R.C.M. 1947, section 91-520] treats of devisees and legatees, as well as heirs, it seemingly was the legislative intent to have it apply to an estate passing by will as well as by the laws of succession in case of intestacy, and this notwithstanding that the testator and not the court determines who shall take the estate of testator. However, since the estate passed at the time of death which was in 1949, this amendment made in 1951 can have no application to this estate. In re Nossen's Estate, 118 Mont. 40, 162 P.2d 216; In re Gaspar's Estate, 128 Mont. 383, 275 P.2d 656." (Emphasis supplied.)
The above authorities clearly demonstrate that section 91-520, supra, before amendment is applicable, not the section as it appears now in its amended state.
The case is remanded with instructions to the District Court to proceed in a manner not inconsistent with the holding in this case.
CASTLES, BOTTOMLY, ANGSTMAN, and ADAIR, JJ., concur.

On Petition for Rehearing
HARRISON, Chief Justice.
The executor herein has filed a petition for rehearing contending that lawful powers of attorney were executed by all of the interested heirs appointing and constituting M.E. Ruane and Roy A. Michaud as their attorneys in fact on February 15, 1949, and the affidavit of the clerk of the District Court annexed to the petition states that said powers of attorney are on file in his office. The State of Montana has filed objections and answer to the petition for rehearing, and as exhibits have attached photostatic copies of the purported powers of attorney running to Ruane and Michaud. From these exhibits it appears that they were signed on February 15, March 14, March 15 and March 19 in the year of 1949. They were all filed together in the office of the clerk of the District Court on June 14, 1949.
On only one of the purported powers of attorney is there any indication of execution before a notary public by a certificate of that officer, and as to that one there is no English translation appended. None of the purported powers of attorney are certified as correct by a United States consul as required by section 91-3802, R.C.M. 1947. See In re Astibia's Estate, 100 Mont. 224, 46 P.2d 712. It is apparent that no authority to represent the foreign heirs was on file with the District Court at the time of, or before the petition for determination of heirship was filed, and that is the determining factor. It should be remembered also that no allegation was made in that petition that the petitioners were acting as attorneys in fact for the foreign heirs, but the specific allegations thereof state they were acting under the court appointment. The fact that weeks later powers of attorney are produced and filed, even if properly executed, could not act retroactively to vest the court with jurisdiction. The time when valid powers of attorney must be filed to enable an attorney for foreign heirs to initiate heirship proceedings *243 is at the time of, or before the filing of the petition, otherwise the court cannot acquire jurisdiction because the requisite petition has not been filed, being one signed by an heir or one entitled to distribution.
It has been suggested to the court, that situations arise where the only heirs are non-residents, or information is communicated to the District Court that there exist other heirs than those listed in the petition for letters. In order to clarify such situations, and perhaps others which might arise, we wish to make clear that this opinion is confined solely to the proper application of the provisions of sections 91-3801 to 91-3803, R.C.M. 1947. It applies only to the proper manner of determining heirship under those provisions of our code. However, in section 91-3803, R.C.M. 1947, appears the following provision: "Nothing in this chapter shall be construed to exclude the right upon final distribution of any estate to contest the question of heirship, title, or interest in the estate so distributed, where the same shall not have been determined under the provisions of sections 91-3801 to 91-3803, inclusive, but where the questions shall have been litigated under the provisions of these sections, the determination thereof, as therein provided, shall be conclusive in the distribution of said estate."
In the case of In re Fleming's Estate, 38 Mont. 57, 98 P. 648, approved by this court in In re Estate of Murphy, 57 Mont. 273, 188 P. 146, it is stated that there are two methods in which heirship may be determined: (1) by following the provisions of sections 91-3801 to 91-3803; and (2) in the proceedings upon final distribution. The latter rule is based on the above-quoted language of section 91-3803. In the Murphy case, 57 Mont. at page 286, 188 P. at page 151, the following language is significant: "In the Fleming Estate Case, this court held that the question of heirship, title, or interest in an estate could be raised in either of two proceedings: First, as provided for in sections 7670, 7671, and 7672, Revised Codes [1907, now R.C.M. 1947, sections 91-3801 to 91-3803]; or, second, in a contest upon final distribution of the estate * * *."
In our opinion herein we have stated that the provisions of section 91-4316, R.C.M. 1947, could not be utilized to initiate any of the proceedings provided for in that section, but could be used if such proceedings were pending. It is obvious that if no determination of heirship is made before distribution and the administrator or executor then petitions for distribution, the way is clear for appointment of attorneys for non-resident or foreign heirs under the provisions of section 91-4316, supra. In re Fleming's Estate, supra, and In re Estate of Murphy, supra, establish the rule that heirship may be determined on final distribution, and section 91-3803, actually so provides.
For these reasons the petition for rehearing is denied.
HARRISON, C. J., and CASTLES, ANGSTMAN, and ADAIR, JJ., concur.