MATTER OF THE ESTATE OF NICK BELL, DECEASED, J. CHAN-
DICE ETTIEN, ATTORNEY AND ESTATE AGENT FOR FOR-
EIGN HEIRS AND LEGATEES UNDER THE LAST WILL AND TESTA-
MENT OF NICK BELL, DECEASED, APPELLANT, v. THE STATE
OF MONTANA, RESPONDENT.

No. 9538.

331 Pac. (2d) 517.

Submitted November 14, 1957. Decided July 16, 1958.
Rehearing Denied December 1, 1958.

J. Chan Ettien, Havre, for appellant.

J. Chan Ettien, Havre, argued orally for appellant.

Forrest H. Anderson, Atty. Gen., Nicholas A. Rotering, Asst. Atty. Gen., for respondent.

Nicholas A. Rotering, Asst. Atty. Gen., argued orally for respondent.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from an order of escheat made by the district court of the third judicial district of the State of Montana, in and for the County of Granite.

Nick Bell died testate on September 2, 1939, in Granite County, Montana, leaving an estate in excess of $11,000. In the will he provided for legacies to certain persons apparently living in Yugoslavia. Then in the "Seventh" and "Ninth" paragraphs he provided,

"Seventh: All of the rest, residue and remainder of my

estate, real, personal and mixed, wheresoever situated, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, now totalling more than Seven Thousand Dollars ($7000.00) in actual cash, and cash value, I give and bequeath to my good friend and benefactor Mrs. Minnie Mullen, whose post office address is the City of Philipsburg, Granite County, Montana.''

"Ninth: Should any of the gifts and bequests made by me in the second, third, fourth, fifth, or sixth paragraphs of this my Last Will and Testament, lapse or fail for any reason, I direct that the bequests so lapsing or failing shall go to and form a part of my residuary estate, and be disposed of under and in accordance with the provisions of the Seventh Paragraph of this, my Last Will and Testament.''

Minnie Mullen, the residuary devisee, was appointed executrix of the Bell estate.

First and final account having been filed on December 7, 1940, the executrix petitioned the district court on the same day to have the account settled and allowed and distribution ordered. Also on December 7, 1940, by and through her attor-ney, E. T. Irvine, Minnie Mullen filed a petition for determination of inheritance tax and sent to the State Board of Equalization notices of the filing and the date set for the hearing of her said petitions and, with regard to her petition for final distribution, caused notices to be placed in three of the most public places in the County of Granite.

By order of the court made and entered December 7, 1940, hearing on each of the aforesaid petitions was set for December 19, 1940.

On December 19, E. T. Irvine filed a petition for appointment as statutory agent for foreign heirs under the provisions of section 91-4101 et seq., R.C.M. 1947. The petition alleged inability to locate and identify foreign legatees because of World War II and carry through the provisions of chapter 104, Laws of 1939 (now R.C.M. 1947, section 91-520), relating to proof of reciprocity by foreign heirs. By an order of the

same date the court appointed Irvine statutory agent, reciting that the existence and identity of the foreign legatees "is not yet known and determined."

The district court entered its order appointing Irvine statutory agent on that day, and also made its order determining inheritance tax, but took the final account under advisement and wholly failed to make any order of final distribution.

A purported decree of settlement of final account and distribution of estate was made February 7, 1941, in which the court recited:

"And it further appearing to the satisfaction of the Court that the said estate, consisting of the property hereinafter particularly described, is now *ready to be distributed among the persons who by law are entitled thereto, and said estate is in a condition to be closed.*

"That the said Nick Bell died testate, leaving surviving * * * [Here are named the Yugoslavian heirs provided for in the will.]

"It is hereby ordered, adjudged and decreed, that *all the acts and proceedings of said Executrix of the last Will and testament of Nick Bell, deceased, as appearing upon the records hereof be, and the said are hereby approved and confirmed.*

"And the residue of said estate of said Nick Bell, deceased, hereinafter particularly described, and now remaining in the hand of said Executrix, and any other property not now known or discovered, which may belong to said estate, or in which said estate may have an interest, be, *and the same is hereby distributed as follows, to-wit*: [Then follow the various legatees provided for in Nick Bell's will.]" Emphasis supplied.

Nothing further was done in the estate of Nick Bell until September 4, 1942, when Irvine, the statutory agent, petitioned for an order of the court permitting him to invest funds in his hands which belonged to the foreign heirs. The ground for granting the order was that the foreign heirs had not yet been determined or known because of World War II. The court

granted the order on the same day reciting the fact that there had ''been no proof of heirship due to the World War * * * and that the determination of the identity of the said heirs, if any, remains for such time as world conditions have become settled.''

On June 1, 1948, J. Chandice Ettien was appointed counsel for foreign heirs. A power of attorney from the foreign heirs to the Yugoslavian Consul General was filed January 6, 1948, and on the same day Ettien filed a purported petition for determination of heirship.

Irvine, on March 1, 1949, requested withdrawal as statutory agent for foreign heirs because he was required to represent the antagonistic interest of Minnie Mullen. Irvine filed his final account and was relieved of his duties. Ettien was named as his successor.

March 29, 1949, Ettien made and filed appearances for foreign heirs. Hearing for determination was thereupon had and taken under advisement.

On May 22, 1952, the attorney general on behalf of the State of Montana, as successor by escheat of the estate of Minnie Mullen, filed a petition asking disallowance of the claim of foreign heirs on three grounds: (1) That no claim was made by foreign heirs in the five-year period as required under the provisions of section 7088, R.C.M. 1935 (now section 91-418, R.C.M. 1947); (2) the district court had no jurisdiction to determine heirship as petitioner Ettien had no interest entitling him to maintain the action, and (3) no appearance as required under section 91-3802, R.C.M. 1947, was made by foreign claimants. The state's petition recited previous escheat of the Minnie Mullen estate and asked that the statutory agent be directed to deliver the foreign legacies to the administrator of the Mullen estate for escheat.

The State's petition for disallowance was heard and argued May 27, 1952, and taken under advisement pending briefs.

Nothing more occurred until April 6, 1953, when Ettien, as statutory agent, moved to dismiss the heirship proceedings

on the grounds the district court was without jurisdiction to determine heirship for the reason that it had been previously determined on the hearing for final distribution, and that no appeal had been taken from the order decreeing distribution or the finding of heirship made therein.

October 13, 1954, the district court made an order of escheat, directing appellant statutory agent to deliver the trust funds in his hands to the administrator of the Minnie Mullen estate for escheat to the State of Montana. This appeal was taken from that order upon four specifications of error; only the last two require any discussion. In the third specification of error Ettien contends the district court erred in denying his motion to dismiss the heirship proceedings; in the fourth he assigns as error the fact the court exceeded its jurisdiction in ordering escheat of foreign legacies.

Appellant contends under his third and fourth specifications of error that by its order of escheat the district court denied the statutory agent's motion to dismiss the heirship proceedings and therefore sustained a collateral attack upon and, in effect, set aside the decree of distribution made thirteen years earlier. It is appellant's position that the decree of distribution was valid, final, and determined all rights of the beneficiaries under Nick Bell's will.

Granting appellant's contention that a determination of heirship may be made on final distribution (see in this regard In re Fleming's Estate, 38 Mont. 57, 98 Pac. 648; In re Estate of Murphy, 57 Mont. 273, 188 Pac. 146; In re Hofmann's Estate, 132 Mont. 387, 318 Pac. (2d) 230), was there such a determination made here?

A decree of distribution is conclusive upon the rights of heirs, legatees or devisees, subject only to be reversed, set aside or modified on appeal. R.C.M. 1947, section 91-3902; In re Estate of Murphy, supra; Harrison v. Cannon, 122 Mont. 318, 203 Pac. (2d) 978; State ex rel. Sanford v. District Court, 124 Mont. 429, 225 Pac. (2d) 866. A decree of distribution has the same force and effect as does a final judgment.

"It has been well-settled in this state that a court will overturn a judgment on collateral attack only if the judgment is void on its face, and it appears affirmatively from the judgment roll that the court did not have jurisdiction or committed an act in excess of its jurisdiction. State ex rel. Thompson v. District Court, 57 Mont. 432, 188 Pac. 902; Burke v. Inter-State Savings & Loan Ass'n, 25 Mont. 315, 64 Pac. 879; Coburn v. Coburn, 89 Mont. 386, 298 Pac. 349; In re Ft. Shaw Irr. Dist., 81 Mont. 170, 261 Pac. 962; Frisbee v. Coburn, 101 Mont. 58, 52 Pac. (2d) 882. When however the judgment roll, upon its face shows that the court was without jurisdiction the judgment cannot be enforced. All proceedings founded upon it are invalid and ineffectual for any purpose and the judgment is open to collateral attack. Crawford v. Pierse, 56 Mont. 371, 185 Pac. 315. The court must have authority to render the particular judgment. In re Lockhart, 72 Mont. 136, 232 Pac. 183; Scilley v. Red Lodge-Rosebud Irr. Dist., 83 Mont. 282, 272 Pac. 543. However, mere absence from the record of papers which ought to be included within the judgment roll is not enough to make it appear affirmatively that the court had no jurisdiction, and it is presumed the court had jurisdiction of the cause and the parties. State ex rel Delmoe v. District Court, supra, 100 Mont. 131, 136, 46 Pac. (2d) 39.'' In re Hofmann's Estate, supra, 132 Mont. 387, 318 Pac. (2d) 230, 236.

The question remains, therefore, in the light of the above law, whether or not the district court, in its order of February 1941, had jurisdiction to make a determination of heirship in its decree of final distribution.

As this court iterated most strongly in the Hofmann case, supra, a district court, when sitting in probate, while still a court of general jurisdiction, can only function and operate on probate matters by following the mandate laid down by the statute. If there is a failure in any one of the jurisdictional prerequisites preceding determination of heirship, and such jurisdictional defect appears affirmatively upon the face of the

judgment roll, the court's order purportedly making such a determination is void and open to a collateral attack.

R.C.M. 1947, section 91-3901, in part, provides: "Upon the ▮▮ final settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or any heir, legatee, or devisee, the court or judge must proceed to distribute the residue of the estate in the hands of the executor or administrator, if any, among the persons who by law are entitled thereto; * * * *provided, that whenever it appears any of the persons claiming to be heirs or claiming a right to share in said estate, are non-residents of the United States, then a proceeding to determine their rights shall be held under the provisions and as provided for in the three preceding sections with reference to the determination of heirship."* Emphasis supplied. The three preceding sections referred to are sections 91-3801, 91-3802 and 91-3803.

As mentioned before, certain of the heirs appear to be residents of, and at the time of the petition for final distribution on December 7, 1940, were residing in Yugoslavia. This fact appeared plainly from the face of the petition for distribution. Faced with this circumstance, what procedure should have been followed? Obviously, determination of heirship had to be made as provided for in section 91-3901. The proviso of that section, emphasized above, refers the procedure for determination of heirship to the three preceding sections.

R.C.M. 1947, section 91-3801, provides that upon the filing of petition for determination of heirship "the court or judge must make an order directing service of notice to all persons interested in said estate, to appear and show cause, on a day to be therein named, not less than sixty days nor more than four months from the date of the making of such order * * *." No such notice was given, nor was service had upon all persons interested in the estate. The only notice given was that of posting in three public places. The face of the judgment roll so proclaims.

Furthermore, the purported decree of distribution, promulgated upon a hearing had December 19, 1940, at which time the attorney for the executrix successfully petitioned for an order to have himself appointed for nonresident heirs, affirmatively shows that no determination of heirship was had under the provisions of sections 91-3801 through 91-3803. The hearing for distribution was had on the 19th of December, which was the same day executrix' attorney averred the fact there could be no determination of reciprocity as required by section 91-520 because of the war. If the decree of distribution was predicated on a hearing of that date, then it was wholly illegal and void because not preceded by: (1) a determination of heirship as required by sections 91-3901 and 91-3801 et seq.; and (2) by notice as required by section 91-3801.

The aforementioned lack of proceedings were all jurisdictional prerequisites to a valid decree of distribution and determination of heirship. The judgment roll reciting on its face —*voidness*, there can be no weight given to appellant's argument that the decree of distribution was final and therefore not subject to collateral attack. See In re Hofmann's Estate, supra.

Furthermore Mr. Ettien never qualified as statutory agent under the provisions of section 91-4101. As provided by section 91-4102, the agent *must* execute a bond to the State of Montana to be approved by the court or judge, conditioned that he shall faithfully manage and account for the estate. No such bond was ever filed in this case.

Moreover, Mr. Ettien never filed any power of attorney from the foreign heirs. The only power of attorney filed was one executed to the Yugoslavian Consul General. As stated by this court in In re Hofmann's Estate, supra, in order to vest the court with jurisdiction to determine heirship under the provisions of section 91-3801 et seq., there must be a petition filed by the heirs or someone entitled to distribution, or by an attorney acting for the foreign heirs who has filed his power of attorney prior to, or at the same time of the

filing of his petition for determination of heirship. Therefore, Mr. Ettien represented and he represents no party in interest; he has failed to produce any authority whatever entitling him to appeal or participate in this matter. Until May 22, 1952, being some thirteen years after the death of the testator, Nick Bell, no claim had been made by or on behalf of any of the foreign heirs for any share in the estate.

By reason of these factors, the order of the district court escheating the property to the State of Montana is affirmed.

MR. JUSTICES CASTLES and ADAIR and THE HONORABLE LEROY L. McKINNON, District Judge (sitting in place of MR. JUSTICE BOTTOMLY), concur.

MR. JUSTICE ANGSTMAN (dissenting):

I think the foreign heirs named in the will of Nick Bell have not yet had a fair run for their money.

Under the will of Nick Bell, Minnie Mullen was residuary legatee and entitled to all lapsed legacies. She filed a petition in court asking for distribution of the estate according to the terms of the will. That made it unnecessary for the nonresident heirs or legatees to institute any proceedings to determine their rights of heirship, under the express command of subdivision (2) of section 91-3901, R.C.M. 1947. They appointed Yugoslavian Consul General in Chicago and his successor as their lawful attorney to represent them and thus made claim to these legacies. In re Estate of Sorensen, 44 Cal. (2d) 306, 281 Pac. (2d) 870. Whether he in turn assumed to appoint Mr. Ettien the record does not disclose.

The record sufficiently indicates that the foreign legatees have not abandoned their rights, but on the contrary took steps to assert them. They established their identity as legatees by their deposition. If the present proceedings are insufficient to establish their rights, I think they should be given further opportunity to do so.

The matter of proving reciprocity was impossible during the

war period. The statute of limitations was suspended during that period. The applicable statute of limitations was then five years. Section 7088, R.C.M. 1935, now R.C.M. 1947, section 91-418, as amended by section 1, Chapter 44, Laws 1947. It was suspended until the end of the war and until peace was declared on October 19, 1951. See Joint Resolution of Congress, 50 U.S.C.A. Appendix preceding section 1.

I think these legacies should be reported to the alien property custodian or the attorney general of the United States or both under the Trading with the Enemy Act, 50 U.S.C.A. Appendix, section 1 et seq., to the end that if these foreign legatees have any right they may be protected. Compare In re Gaspar's Estate, 128 Mont. 383, 275 Pac. (2d) 656, and authorities therein cited, and In re Renard's Estate, 179 Misc. 885, 39 N. Y. S. (2d) 968.